FILED
2016 Aug-16  AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **REGIONS BANK,** | ) | |
| | ) | |
| **Plaintiff/Counter Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:14-CV-517-VEH** |
| | ) | |
| **OLD REPUBLIC UNION** | ) | |
| **INSURANCE COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants/Counter Plaintiffs.** | ) | |

---

## <u>MEMORANDUM OPINION</u>

Because the federal courts are generally without jurisdiction to hear cases concerning domestic relations, *see Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1858), the opportunity to preside over a messy breakup, distribute assets, and continually revisit who-wronged-whom is somewhat less common than in state court. This case presents the rare exception: a business divorce. When they were young, Old Republic Union Insurance Company and Old Republic Insurance Company [collectively, "Old Republic"] entered into a relationship with John Thompson Lanier and Chattawood Insurance Company [collectively, "Chattawood"]. The bloom eventually came off the rose, and a custody dispute arose over the fruits of their relationship, which are funds in certain accounts at Regions Bank, N.A. After more than twenty years, the hapless foster parent, Regions, has asked the court to figure out

who should get the baby—or to determine whether a more Solomonic solution is in order.  Of course, the parents have dredged up old disputes while also litigating the issue of custody, and currently before the court are Regions' and Old Republic's motions for summary judgment on the claims asserted against them by Old Republic and Chattawood, respectively. Chattawood, for its part, has moved for the court to award full custody. The motions for summary judgment will be **GRANTED**, and Chattawood's motion will be **DENIED WITHOUT PREJUDICE**.

## FACTUAL BACKGROUND

The facts of this case were set forth exhaustively in the court's opinion on Chattawood's motion for summary judgment, so there is no need for a detailed retread here; a précis will suffice.[1] In short, this action revolves the parties' competing claims to two accounts at Regions, and in particular, 1) how much of each account belongs to each party, and 2) who is entitled to make withdrawals from the accounts. Some background information about Chattawood and Old Republic's prior falling-out will help to put the present ownership dispute in perspective.

Chattawood and Old Republic entered into a reinsurance agreement in 1987, and in 1991 two accounts were funded at Regions to facilitate the transfer of funds pursuant to the reinsurance agreement. These are the accounts at issue here. By 1992,

---

[1] Needless to say, this statement does not represent findings of fact.

Chattawood and Old Republic were embroiled in a controversy about whether Old Republic was complying with its obligations under the agreement. The disagreement resulted in litigation, which in turn resulted in arbitration, which led to more litigation (including a petition for contempt!). Ultimately, they settled in 1997 and agreed that Chattawood was entitled to all amounts in excess of 102% of the amount required to be in the custody accounts, and Old Republic was entitled to reimbursements for amounts it paid pursuant to the reinsurance agreements. The problem was (and is) that the parties, while abstractly acknowledging the terms of the settlement, cannot agree on a dollar amount to which each of them is entitled. This is the genesis of dispute number one.

The second dispute, who was entitled to make withdrawals, raised the specter of multiple liability for Regions, so it sought the court's assistance by initiating this action. The original custody agreements provided that Chattawood owned the accounts, with Old Republic listed as beneficiary thereon. Additionally, the agreements' Section IV provided that "[t]he amounts deposited in the custodian account shall be withdrawn on order of [Old Republic] . . . for the following purposes only;" the approved purposes themselves appear to be immaterial to this action. (Doc. 100-1 at 4). Further, "[t]he Custodian shall have no responsibility whatsoever in connection with the propriety of withdrawals from the Custodian Account . . . except

3

to see that withdrawals are made only upon the order of properly authorized representative of the beneficiary." (*Id.* at 5). Based on the foregoing, it is Old Republic's position that it can make a withdrawal whenever it pleases, and it has been asking Regions to "put the money in the bag,"[2] so to say, since 2001.

But Section VI of the agreement provides that the "Bank is hereby authorized and instructed to act upon all directions received by it from [Chattawood] subject to Section IV." (*Id.* at 5–6). Since 1997, Chattawood has claimed that Old Republic overcharged it for this or that and has therefore disputed the amount of the custodial accounts to which Old Republic was (and is) entitled. Until these disputes are resolved, Chattawood opposes Old Republic's withdrawal of funds. So Regions was caught between complying with Chattawood, which may give instructions to Regions, and complying with Old Republic, which was arguably entitled to remove the money at will. Throwing its hands up, Regions refused in 1997 to disburse any money without Chattawood's and Old Republic's consent. Since at least 2006, there have been no withdrawals from the account, despite Old Republic's repeated attempts.

Regions interpleaded the funds in this court in 2014, naming Chattawood and Old Republic as interpleader defendants. Old Republic answered, filing counterclaims

---

[2] *Spongebob Squarepants: Doing Time* (Nickelodeon television broadcast Jan. 21, 2002) (in which the titular Spongebob, while wearing a robber's mask, demands that the money be placed into a bag—from his own account).

against Regions and alleging cross claims against Chattawood. Chattawood's initial answer did not contain any cross claims, but its amended answer asserted cross claims—they called them counterclaims—against Old Republic, as well as a third party complaint against Stan Caldwell and Universal Adjusters, Inc. The court granted summary judgment in favor of Chattawood on Old Republic's cross claims. In particular (it is important later), the court found that all but one legal claim was time-barred; the remaining legal claim for civil conspiracy lacked an underlying wrong on which to predicate a conspiracy, and the equitable claim was dismissed because Old Republic's legal remedies were adequate to protect its rights.

Chattawood's Third Party Claims against Caldwell and Universal Adjusters were dismissed by stipulation in short order. On February 26, 2016, the court received a deluge: Regions moved for summary judgment against Old Republic; Old Republic moved for summary judgment against Chattawood; and Chattawood moved to disburse all of the funds to Chattawood. The motions for summary judgment will be **GRANTED**, and the motion for disbursement of funds will be **DENIED WITHOUT PREJUDICE**.

### SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks omitted).

### OLD REPUBLIC'S MOTION FOR SUMMARY JUDGMENT

Old Republic moves for summary judgment as to all of Chattawood's claims,[3] arguing that all of them except for civil conspiracy are time-barred, and the claim of civil conspiracy must be dismissed because an underlying wrong is required to sustain a claim of civil conspiracy. Chattawood does not dispute that the claims would be time-barred (and civil conspiracy would therefore crumble), if the statute of limitations applied to its claims. But, they say, compulsory counterclaims are not subject to the statutes of limitations in Alabama, so their claims should survive. Old Republic takes the position that the compulsory counterclaim exception to the general applicability of statutes of limitations is inapplicable in this case.

---

[3] Chattawood has asserted the following claims against Old Republic: Count I - Breach of Agreements; Count II - Wantonness; Count III - Malice/Oppression; Count IV - Conversion; Count V - Civil Conspiracy; Count VI - Negligence/Wantonness; Count VII - Bad Faith. (*See generally* doc. 57).

The rule in Alabama is that "all compulsory counterclaims, whether offensive or defensive, are not subject to the statute-of-limitations defense." *Exxon Corp. v. Dep't of Conservation and Nat. Res.*, 859 So.2d 1096, 1102 (Ala. 2002). Let's call this the compulsory counterclaim exception ("CCE"). Although the CCE admits of no exceptions on its face, the parties agree that the reasoning in *Romar Dev. Co., Inc. v. Gulf View Mgmt. Corp.*, 644 So.2d 462 (Ala. 1994), which announced the CCE, suggests that the initial claims triggering the compulsion to file counterclaims must <u>themselves</u> be enforceable (and hence timely) for the CCE to apply. Despite Chattawood's agreement that *Romar* appears to require that the initial claims be timely, it has thrown out a Hail Mary by suggesting that, if the court determines another rule applies, perhaps its claims would not be time-barred.

As long as the court is asked to do issue spotting, a threshold one for the application of CCE is that the asserted claim is both a counterclaim and a compulsory one. Since the question here turns on the enforceability of an Alabama statue of limitations, it is almost certainly the case that the court must consider whether the claim here would be a compulsory counterclaim under <u>Alabama law of civil procedure</u>.[4]   *See Baron Tube Co. v. Transp. Ins. Co.*, 365 F.2d 858, 860 (5th Cir.

---

[4] This is so even though federal law governs the assertion of the claims as a procedural matter; *i.e.*, federal law determines whether the claim was <u>actually</u> a compulsory counterclaim in <u>this</u> action, not whether it <u>would have been</u> if brought in Alabama.

7

1966) (federal courts apply state statute of limitations on state claims).[5] Since Chattawood's claims are asserted against a co-defendant, they are nominally cross-claims, and there is no such thing as a compulsory cross-claim—not under Alabama law, and not under federal law. *See Stewart v. Brinley*, 902 So.2d 1, 11 (Ala. 2004); *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 146 n. 11 (3d Cir. 1999). In Alabama, "[h]owever, once a co-party has filed a cross-claim, the party against whom a cross-claim is asserted must plead as a counterclaim any right to relief that he has against that co-party which arises from the same transaction or occurrence." *Ex parte Reliance Ins. Co.*, 404 So.2d 610, 612 (Ala. 1981).[6] Since Chattawood's claims arise from the same dispute as Old Republic's claims, the Alabama courts would consider Chattawood's claims compulsory counterclaims.

Now, the main event: does the CCE apply when the initial claim is untimely? It does not appear that any Alabama case has so held, but the CCE is usually qualified by language to the effect that "it may be availed of . . . <u>so long as plaintiff's cause of action exists</u>," *Campbell v. Regal Typewriter Co., Inc.*, 341 So.2d 120, 127 (Ala.

---

[5]  This authority is controlling in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

[6]  The federal decisions, such as they are, are similar, although some courts have suggested that the initial cross-claim must seek something beyond indemnity to require the counter-cross-claim to be pleaded. *See generally* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1404 (3d ed. 2010).

1976) (citation omitted), or so long as it "subsists and may be enforced," *Romar*, 644 So.2d at 470 (citation omitted), or so "long as the main action is timely." *Riley v. Montgomery*, 463 N.E. 2d 1246, 1249 (Ohio 1984). So, Old Republic reasons that, since its claims are time-barred, they are unenforceable, and thus, *Romar's* qualifying language prevents the CCE's operation. The court concludes that *Romar*, as well as its qualifying language, controls here. Summary judgment will be granted on Chattawood's Counts I–IV and VI–VII because they are untimely. Summary judgment will be granted on Count V, Civil Conspiracy, because summary judgment was granted on all other claims. *See U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1294 (11th Cir. 2001) ("[A] plaintiff must have a viable underlying cause of action" for a civil conspiracy claim.).

## REGIONS' MOTION FOR SUMMARY JUDGMENT

Regions moves for summary judgment as to Old Republic's claims against Regions.[7] In particular, Regions argues that the longest limitations period applicable to any of Old Republic's claims is six years, so any of Old Republic's claims that accrued before 2008 will be time-barred. All of Old Republic's claims did in fact

---

[7] Old Republic has brought the following claims against Regions: "Counterclaim III - Breach of Account Agreements;" "Cross[-]claim & Counterclaim IV - Conversion;" "Counterclaim VII - Violation of UCC Article 4A;" "Cross[-]claim & Counterclaim VIII -Civil Conspiracy;" and "Crossclaim IX - Equitable Accounting." (*See generally* doc. 73).

9

accrue before 2008, so they are all (except the claim for equitable accounting)time-barred. Old Republic only tepidly disputes that the claims are untimely, arguing that Regions has a continuing duty to Old Republic to allow Old Republic to withdraw the funds. To the extent this is an argument disputing the date of accrual of the claims, it is insufficiently developed. "[T]he onus is upon the parties to formulate arguments," *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and a failure to cite authority waives an argument. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n. 13 (11th Cir. 2007). Curiously, Old Republic then proceeds to tacitly concede that the claims are time barred when it says "[r]egardless of the date of accrual of Old Republic's affirmative claims against Regions, equity demands that Old Republic be allowed [to prove how much of the fund it is entitled to]." Summary judgment will be granted in favor of Regions on Old Republic's Counterclaims III–IV and VII–VIII.

As to the request for an equitable accounting, the court declines to do so for the reason set forth in the court's opinion on Chattawood's motion for summary judgment: Old Republic has failed to demonstrate the inadequacy of its remedies at law. *See Comer v. Birmingham News Co.*, 118 So. 806, 807 (Ala. 1928). Further, the court's disposition of this interpleader action will require that it consider the equities here, rendering an equitable accounting redundant. *See Austin v. Texas-Ohio Gas Co.*,

10

218 F.2d 739, 744 (5th Cir. 1955) ("The right to interplead is an equitable right.").

Regions' motion for summary judgment will be **GRANTED**.

### CHATTAWOOD'S MOTION FOR DISBURSEMENT OF FUNDS

Chattawood moves for release of the funds in this case on two grounds: first, that all of Old Republic's claims have been dismissed, and second, that Chattawood is the "Owner" of the accounts and the only remaining claimant. Old Republic responds by arguing, first, that the non-viability of its affirmative claims does not undermine the undisputed fact that Old Republic is entitled to some portion of the interpleaded funds, and second, that Chattawood is the "Owner" of the funds for the benefit of Old Republic. In reply, Chattawood points out that Old Republic failed to plead its entitlement to the funds as required by Alabama(?)[8] law. Chattawood's motion will be denied without prejudice for the reasons that follow.

Chattawood submitted its motion for disbursement of funds after summary judgment was granted in its favor against Old Republic but before the other shoe dropped on Chattawood's claims. The order accompanying this opinion is that second shoe, which grants summary judgment against Chattawood in favor of Old Republic.

---

[8] "Questions of jurisdiction and procedure in federal court interpleader actions are determined by federal law." *Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1348 n. 3 (S.D. Fla. 2010). While Alabama's substantive law provides the rule for who owns the funds, the suggestion that there is a time, place, and manner of asserting ownership is essentially a procedural objection, so it is to federal law that the court and parties should turn.

So, if the non-viability of the Old Republic's damages claims were fatal to its entitlement to the funds, then the time-bar similarly would be fatal to Chattawood's entitlement; Chattawood's position would doom its own claim as well. It would then seem the funds belong to Regions, or perhaps should simultaneously be owned by Old Republic and Chattawood until the end of time.

Or Chattawood's position could be wrong, which is the court's take on the matter. Simply because the parties' tort and contract claims have expired does not mean that the underlying ownership rights of Chattawood and/or Old Republic have evaporated. Accordingly, the court rejects Chattawood's position that it is the sole remaining claimant, in no small part because the parties do not dispute that, while Chattawood is the "Owner" of the accounts, it is for the benefit of Old Republic.

This brings us to Chattawood's alternative argument that Old Republic—in a massive oversight—failed to claim the property. They support their position by pointing to Regions' initial complaint, which alleged (in relevant part) that "Regions has been the subject of conflicting and competing claims the Old Republic Companies and Chattawood to the Custodial Account assets. Regions has no ownership interest or claim to the assets." (Doc. 1, ¶ 7). In its answer, Old Republic said "Old Republic admits that Regions has no ownership interest or claim to the assets. Old Republic denies the remaining averments in paragraph 7." (Doc. 73, ¶ 7).

Hence, Chattawood says Old Republic cannot "point to its Answer to the interpleader itself as establishing a claim to the interpleaded funds." (Doc. 97 at 3).

Were the court considering a motion to dismiss a purely legal claim, Old Republic's omission would perhaps be its downfall. Or perhaps not; the Rules of Civil Procedure do not require the recitation of magic words. *Cf. Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) (dismissal for technical pleading deficiency is appropriate where it is "virtually impossible" to understand the complaint). Rather, the rules reflect a general rejection of rigid pleading requirements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). This liberality is more important here, in an equitable proceeding, *see Johnson v. Johnson*, 139 F.2d 930, 933 (5th Cir. 1943),[9] where unforgiving condemnation of a party's missteps would be grossly inequitable. Additionally, Old Republic's complaint is replete with references to its alleged right to the account, so a technical failing in one portion does not wipe away the rest of the complaint. (*See, e.g.*, doc. 73, ¶¶ 42, 44, 57, 58).

Simply put, it is obvious that Old Republic is entitled to at least some of the funds in the account, *see* doc. 96-2 at 258:6–14, so the court will not allow Old Republic's claim to be defeated by the fact Chattawood was first past the post on

---

[9] This authority is controlling in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

summary judgment. *See Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1348 (S.D. Fla. 2010) ("[D]istrict courts have broad and significant powers in an interpleader action."). Finally, mere failure to formally answer the interpleader complaint, in certain circumstances, is not sufficient to deny the non-answering party's right to the property.[10] *Syms v. McRitchie*, 187 F.2d 915, 919 (5th Cir. 1951).[11] Chattawood's motion will be denied without prejudice.

The motions discussed herein will be disposed of by separate order. An order setting a status conference as well as directions on which issues the parties shall be prepared to address will also be published separately.

**DONE** this 16th day of August, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[10] *Syms* also stands for the proposition that when all but one claimant is dismissed, the court does not necessarily err by giving the interpleaded funds to the sole remaining claimant.

[11] This authority is controlling in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).